UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:18cv63068

LESLIE GOUTIER,

    Plaintiff,

v.

NATIONAL CREDIT ADJUSTERS, L.L.C.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**<u>INJUNCTIVE RELIEF SOUGHT</u>**

Plaintiff LESLIE GOUTIER ("Plaintiff"), by and through undersigned counsel, seeks redress for the illegal practices of Defendant NATIONAL CREDIT ADJUSTERS, L.L.C. ("Defendant"), *to wit*, for Defendant's violations of 47 U.S.C. § 227, the Telephone Consumer Protection Act, 15 U.S.C §1692, the Fair Debt Collection Practices Act, and Fla. Stat. 559.72, the Florida Consumer Collections Practices Act and in support thereof, Plaintiff states the following:

<u>**NATURE OF ACTION**</u>

**I.    THE TELEPHONE CONSUMER PROTECTION ACT**

    1.    The TCPA prohibits "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . ." 47 U.S.C. § 227(b)(1)(A).

2. The TCPA defines "automatic telephone dialing system" or "ATDS" as "equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

3. The TCPA provides for a private right of action under which persons and entities may obtain injunctive or monetary relief for violations of the Act, including statutory damages of $500 per violation. Id. § 227(b)(3). Statutory damages may be trebled if the violator is found to have acted willfully or knowingly. Id.

## II. THE FAIR DEBT COLLECTION PRACTICES ACT

4. The Fair Debt Collection Practices Act (the "FDCPA") is a series of statutes which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. §1692. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure [sic] that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

5. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b).

6. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collectors and provides for specific consumer

rights. 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

7. Section 1692c of the FDCPA states, *inter alia*, that:

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

15 U.S.C. § 1692c(a)(1).

8. Section 1692d of the FDCPA prohibits the use of "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" 15 U.S.C. § 1692d. The six subsections of § 1692d set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. § 1692d(5).

9. As set forth in more detail below, Defendant has violated the aforementioned provisions of the TCPA and FDCPA, and as a result, Plaintiff seeks damages and/or injunctive relief for the same.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C § 1331, and 28 U.S.C § 1337.

11. Venue in this District is proper because Plaintiff resides here, Defendant transacts business here, and the complained conduct of Defendant occurred here.

## PARTIES

12. Plaintiff is a natural person, and a citizen of the State of Florida, residing in Miami-Dade County, Florida.

13. Plaintiff is the holder and subscriber, with dominion and control, over a cellular telephone assigned the number ending in "2831."

14. Defendant is a Florida corporation, with its principal place of business located in Hutchinson, Kansas.

15. On information and belief, Defendant engages in interstate commerce by regularly using telephone and mail in a business whose principal purpose is the collection of debts.

16. At all times material, Defendant was acting as a debt collector in respect to the collection of Plaintiff's debts.

## FACTUAL ALLEGATIONS

17. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such a frequency as can be reasonably expected to harass.

18. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls notwithstanding the fact that Plaintiff verbally and explicitly revoked and/or limited any consent Defendant may have had to contact Plaintiff through his cellular device.

19. Defendant made at least one call to (\*\*\*) \*\*\*-2831 using an "automatic telephone dialing system" (ATDS).

20. Defendant made at least fifty (20) calls to (\*\*\*) \*\*\*-2831 using an ATDS.

21. Defendant made at least one hundred and thirty (50) calls to (***) ***-2831 using an ATDS.

22. Each call the Defendant made to the Plaintiff in the last four years was made using an ATDS.

23. Each call the Defendant made to the Plaintiff was made using an ATDS which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

24. Furthermore, at least one of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227 (b)(1)(A).

25. Upon information and belief, Defendant has stipulated in other lawsuits that the telephone system used to call the Plaintiff at use during the relevant time period of this action was in fact an ATDS.

26. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

27. Plaintiff is the regular user and subscriber of the cellular telephone number at issue, (***) ***-2831, and was the called party and recipient of Defendant's above described calls.

28. Starting in or about October 2018, Plaintiff started receiving telephone calls to his aforementioned cellular telephone number from Defendant seeking to recover an alleged debt. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, (904) 453-7876.

29. Immediately upon receipt of the calls, on or about October 16, 2018 , due to

a ceaseless barrage of daily calls, Plaintiff answered a call from Defendant and informed an agent/representative of the Defendant that their incessant calls were harassing him and demanded that Defendant cease placing calls to his aforementioned cellular telephone number. The calls continued to come in up to the point of the filing of this action.

30. Plaintiff again expressly told an agent for Defendant that he wished to not be contacted. Up to the filing of this Complaint, Defendant continues to call Plaintiff at least daily and at times, multiple times throughout the day.

31. Each subsequent call Defendant made to the Plaintiff's after he explicitly revoked and/or limited any consent Defendant may have had to call Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

32. Each of Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

33. Defendant has recorded at least one conversation with the Plaintiff

34. Defendant has recorded numerous conversations with the Plaintiff.

35. Despite actual knowledge of its wrongdoing, and that it did not have Plaintiff's consent, the Defendant continued its barrage of phone calls to Plaintiff's aforementioned cellular telephone number in an attempt to collect an alleged debt.

36. From about January of 2018 through the filing of this Complaint, Defendant placed approximately (50) automated calls to Plaintiff's aforementioned cellular telephone (or as will be established after a thorough review of Defendant's records), despite the Plaintiff revoking any consent Defendant may have had to place calls to his aforementioned cellular telephone number.

37. Defendant's corporate policy and procedures is structured as to continue to

call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have had.

38. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

39. Defendant has a corporate policy of using an ATDS, prerecorded and/or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

40. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in <u>Patriotic Veterans, Inc. v. Zoeller</u>, "every call uses some of the phone owner's time and mental energy, both of which are precious."

41. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

42. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

44. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

45. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

46. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion.

47. All of the above mentioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt from the Plaintiff.

48. Since January 2015, Defendant has had over 150 complaints classified under "communications tactics" filed against it with the Consumer Financial Protection Bureau ("CFPB").

49. In the last three (3) years, the Defendant has had 150 complaints reported to the Better Business Bureau (BBB)[1], of which 123 of those complaints are classified as being related to "Billing/Collection Issues".

50. Defendant is no stranger to intentional, wrongful conduct. Earlier this year, the CFPB fined Defendant in the amount of $3 Million for the following conduct:

> As described in the consent order, the Bureau found that NCA and Hochstein used a network of debt collection companies to collect consumer debt on NCA's behalf. Some of those companies engaged in frequent unlawful debt collection acts and practices that harmed consumers, including by representing that consumers owed more than they were legally required to pay, or threatening consumers and their family members with lawsuits, visits from

---

[1] Retrieved from https://www.bbb.org/us/ks/hutchinson/profile/collections-agencies/national-credit-adjusters-llc-0714-2205 on December 14, 2018.

process servers, and arrest, when neither NCA nor the collection companies intended or had the legal authority to take those actions. NCA and Hochstein continued placing debt with those companies for collection with knowledge or reckless disregard of the companies' illegal consumer debt collection practices. NCA and Hochstein also sold millions in consumer debt to one of those companies with knowledge or reckless disregard of the company's illegal consumer debt collection practices.

*See* https://www.consumerfinance.gov/about-us/newsroom/bureau-settles-national-credit-adjusters-llc-and-bradley-hochstein/

51. Defendant violated the TCPA with respect to the Plaintiff.

52. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
## VIOLATION OF THE TCPA

53. Plaintiff incorporates by reference paragraphs 17-52 of this Complaint as though fully stated herein.

54. The TCPA provides, in relevant part:

> It shall be unlawful for any person within the United States... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service ... or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

55. Defendant and/or its agents placed at least 50 unsolicited telephone calls to Plaintiff cellular phone without Plaintiff's prior consent and utilized an ATDS and/or an artificial/prerecorded voice message in making such calls.

56. Because Plaintiff explicitly told Defendant not to call him during certain times, at the very minimum, all calls Defendant made to Plaintiff's cellular phone *after* such period should be deemed intentional violations of the TCPA.

57. Even after receiving unequivocal instructions/information to the contrary, *to wit*, to stop calling Plaintiff, Defendant has placed, and continues to place egregious number of daily calls to Plaintiff using an automatic telephone dialing system or an artificial or prerecorded voice.

58. In light of the preceding, Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii), and as a result, Plaintiff suffered actual damages in the form of monies paid to receive unsolicited telephone calls.

59. Plaintiff seeks an Order under §227(b)(3)(B) awarding a minimum of $500.00 in damages for each of Defendant's violations of the TCPA. *See* Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir.20110) (stating that the TCPA is essentially a strict liability statute that does not require any intent except when awarding treble damages).

60. Alternatively, pursuant to §227(b)(3)(C) of the TCPA, the Court can award treble damages ($1,500.00) for each willful and knowingly violation of the TCPA committed by Defendant.

61. As set forth above, Defendant continued to call Plaintiff's cellular telephone after Plaintiff had advised Defendant that he (Plaintiff) no longer wished to be called, at a minimum, during certain times of the day.

62. Therefore, the Court should award treble damages ($1,500.00) for each violation of the TCPA committed by Defendant because such violations were committed willfully or knowingly, as well as enjoining Defendant's unlawful telephone calling activities pursuant to §227(b)(3)(A) of the TCPA.

## COUNT II.
## VIOLATION OF THE FDCPA

63. Plaintiff incorporates by reference paragraphs 17-52 of this Complaint as though fully stated herein.

64. The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); *See also* Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA).

65. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act [15 U.S.C §1601], is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

66. In determining whether a debt collector has violated the FDCPA, the debt collector's actions are considered through the least sophisticated consumer lenses. *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985) (holding that, "because we believe that the FDCPA's purpose of protecting consumers is best served by a definition of deceive that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls, we adopt the [] **standard of least sophisticated consumer…**" (emphasis added) (internal quotations and citations omitted)).

67. In light of the preceding, Defendant has violated the FDCPA, to wit,

   (a) Sections 1692d and 1692d(5) by causing Plaintiff's cellular telephone to ring and/or engage Plaintiff in telephone conversation repeatedly with the intention of annoying and/or harassing Plaintiff.

    (b)    Sections 1692c(a)(1) by contacting Plaintiff at a time known to be inconvenient to Plaintiff.

68. As a result of Defendant's aforementioned FDCPA violations, Plaintiff has suffered actual damages, including but not limited to mental suffering, whereby Plaintiff is entitled to relief for such, in addition to statutory damages, attorney's fee and court costs.

## COUNT III.
## VIOLATION OF THE FCCPA

69. Plaintiff incorporates by reference paragraphs 17-52 of this Complaint as though fully stated herein.

70. Defendant violated Fla. Stat. §559.72(7) by willfully communicating with the Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or willfully engage in other conduct which can reasonably be expected to abuse or harass Plaintiff.

## DEMAND FOR JURY TRIAL

71. Plaintiff respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Defendant, awarding Plaintiff the following relief:

(a) Statutory damages of $500.00 for each TCPA violation determined to be negligent, pursuant to 47 U.S.C. § 227(b)(3)(B);

(b) Treble damages of $1,500.00 for each TCPA violation determined to be willful and/or knowing, pursuant to 47 U.S.C. § 227(b)(3)(C);

(c) Actual damages for the TCPA violations committed by the Defendant.

(d) An injunction requiring Defendant to cease all unsolicited telephone calling activities;

(e) Statutory and actual damages, as provided under 15 U.S.C. §1692k, for the FDCPA violations committed by Defendant in attempting to collect the Consumer Debt.

(f) Costs and reasonable attorneys' fees as provided by both 15 U.S.C. §1692k;

(g) Statutory and actual damages, costs and attorneys' fees as provided under Fla. Stat. §559.77(2), for the FCCPA violation committed by Defendant and;

(h) Any other relief that this Court deems appropriate and just under the circumstances.

DATED: December 15, 2018

Respectfully Submitted,

/s/ Jibrael S. Hindi            .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:   jibrael@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136
Fax:      855-529-9540